UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ANN GATES MIDDLETON,<br><br>　　　　　　　　　Plaintiff,<br>　v.<br>CAVALRY PORTFOLIO SERVICES, LLC,<br>CITIBANK N.A. INC.,<br><br>　　　　　　　　　Defendants. | Case No. 2:16-cv-01760-MMD-PAL<br><br>ORDER<br><br>(Defendant Cavalry Portfolio Services, LLC's Motion to Dismiss – ECF No. 12; Defendant Citibank N.A., Inc.'s Motion to Dismiss – ECF No. 29) |

**I.　SUMMARY**

Before the Court is Defendant Cavalry Portfolio Services, LLC's ("CPS") Motion to Dismiss Plaintiff's First Amended Complaint ("Motion") (ECF No. 12) and Defendant Citibank N.A. Inc.'s ("Citi") Motion to Dismiss Plaintiff's First Amended Complaint ("Motion") (ECF No. 29) (collectively, "Motions"). The Court has reviewed the Plaintiff's Opposition to CPS's Motion (ECF No. 14) and Plaintiff's Opposition to Citi's Motion (ECF No. 32), as well as CPS's reply (ECF No. 18) and Citi's reply (ECF No. 34).

For the reasons discussed below, CPS's Motion is granted, and leave to amend will be permitted as to Count I. Citibank's Motion is also granted.

**II.　BACKGROUND**

The following facts are taken from Plaintiff Ann Middleton's First Amended Complaint ("FAC"). (ECF No. 5.) Plaintiff alleges that on or about March 8, 2016, she sent a certified letter to Citi disputing a credit card bill that appeared on her credit report. Citi

responded in writing that Middleton's account had been sold and was being deleted from the three credit reporting agencies ("CRAs"). On or about April 10, 2016, Plaintiff received a collection letter from CPS demanding payment (presumably in relation to her former Citibank account). Three days later, Plaintiff sent a debt validation letter by fax to CPS and also requested that CPS not contact her (other than to validate the debt). However, on April 29, 2016, Plaintiff received a collection call from CPS, which was made with an auto-dialer. The CPS representative did not immediately identify himself as a debt collector.

On May 10, 2016, Plaintiff received another collection letter from CPS with a copy of Plaintiff's purported bill. She immediately sent another debt validation letter by fax, claiming that CPS had not complied with her earlier debt validation request (ostensibly the attached bill was their attempt to satisfy Plaintiff's request). In the letter, she also disputed the validity of the debt or a duty that she had to pay it. Plaintiff states that CPS did not respond to this fax.

Plaintiff alleges three counts against Defendants. In Count I, she alleges that CPS violated the Fair Debt Collection Practices Act ("FDCPA") by: (1) falsely representing the character, amount, or legal status of the debt; (2) using false representations or deceptive means to attempt to collect the debt or obtain information from Plaintiff; (3) failing to send Plaintiff a written notice apprising Plaintiff of her rights under the FDCPA; (4) failing to provide written validation of the debt before resuming collection activities; and, (5) contacting Plaintiff after she requested that CPS not contact her. In Count II, Plaintiff alleges that CPS violated the Telephone Communication Protection Act ("TCPA") by: (1) using an automatic telephone dialing system to call Plaintiff's home phone number without express consent to do so; (2) soliciting a "Do Not Call" registry phone number; and, (3) failing to state the caller's name at the beginning of the collection call. Plaintiff appears also to allege in this count that Citi is vicariously liable for CPS's violation of the TCPA. In Count III, Plaintiff alleges that both CPS and Citi violated NRS § 598.0977 of the Nevada Deceptive Trade Practices Act ("NDTPA"), which provides that an elderly person or person with a disability who suffers damage or injury from a deceptive trade practice may be

compensated for the actual damages caused by the trade practice. In this count, Plaintiff also contends that Citi's corporate charter does not authorize it to engage in consumer lending, that she does not have a contract with Citibank, and that Citi is in violation of the Federal Trade Commission Act by failing to contain a specific notice in their consumer credit contracts. Plaintiff also mentions a David P. Owen in this count, asserting that she "disputes that [he] owes [Citi] money and demands strict proof." (ECF No. 5 at 7.) The Court will disregard this allegation and claim for relief as there are no facts pertaining to a David P. Owen in the FAC.

### III.  LEGAL STANDARD

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pleaded complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570) (internal quotation marks omitted).

In *Iqbal*, the Supreme Court clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pleaded factual allegations in the complaint; however, legal conclusions are not entitled to an assumption of truth. *Id.* at 679. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Id.* at 678. Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's

complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged — but it has not shown — that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (internal quotation marks and alteration omitted). When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly,* 550 U.S. at 570. A complaint must contain either direct or inferential allegations concerning "all the material elements necessary to sustain recovery under *some* viable legal theory." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

A complaint must contain either direct or inferential allegations concerning "all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989) (emphasis in original)). Mindful of the fact that the Supreme Court has "instructed the federal courts to liberally construe the 'inartful pleading' of *pro se* litigants," *Eldridge v. Block,* 832 F.2d 1132, 1137 (9th Cir. 1987), the Court will view Plaintiff's pleadings with the appropriate degree of leniency.

**IV.   CPS'S MOTION (ECF No. 12)**

    **A.   Count I**

CPS argues that Plaintiff fails to state a claim under the FDCPA because she fails to establish that CPS is a "debt collector," that she is a "consumer," or that the financial obligation at issue is a "debt." (ECF No. 12 at 6.) The Court finds that Plaintiff properly alleges that CPS is a debt collector and that she is a consumer but that she fails to state sufficient facts to demonstrate that the debt stems from personal, household or family expenses. The Court gives Plaintiff leave to amend her complaint to demonstrate that the debt at issue stems from one or more of these uses.

Plaintiff states in her opposition to CPS's Motion that CPS is a debt collector, as the FDCPA "states that if you are not the original creditor, and take over a loan that you

allege is in default, you are a debt collector[.]" (ECF No. 14 at 6. (citing *Bridge v. Ocwen Federal Bank, FSB*, 681 F.3d 355 (6th Cir. 2012)).) Plaintiff is correct. A plaintiff alleging an FDCPA claim must plead "factual content that allows the court to draw the reasonable inference that [defendant] is a debt collector." *Schlegel v. Wells Fargo Bank, NA*, 720 F.3d 1204, 1208 (9th Cir. 2013). The FDCPA defines "debt collector" as: (1) "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts," or (2) any person "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). In the FAC, Plaintiff claims that Citi informed her it had sold the debt, yet CPS subsequently sought to collect on a debt (the Court infers that this debt is the Citi debt). Plaintiff alleges that CPS used a telephone, an instrumentality of interstate commerce, to contact her about collection of a debt. Further, certain district courts have explicitly found CPS to be a debt collector, demonstrating that CPS is in the business of collecting debts. *See Rodriguez v. Cavalry Portfolio Services, LLC*, No. 11-CV1837-LAB-MDD, 2012 WL 726474 (S.D. Cal. Mar. 6, 2012); *see also Wakefield v. Cavalry Portfolio Services, LLC*, No. 06-CV-1066-BR, 2006 WL 3169517 (D. Or. Nov. 1, 2006); *see also Goodrick v. Cavalry Portfolio Services LLC*, No. CIV 12-1822 PHX DGC, 2013 WL 4419321 (D. Ariz. Aug. 19, 2013).[1]

       The Court also finds that Plaintiff sufficiently alleges that she is a consumer. The FDCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3). Plaintiff clearly alleges that she is a consumer, as she alleges that she has been informed by CPS that she is obligated to pay a debt to them that she originally had with Citi. Under the FDCPA, "debt" is "any obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15

---

[1] In addition, in CPS's Motion it strongly implies that it is a debt collection company. (*See* ECF No. 12 at 10-11.)

U.S.C. § 1692a(4). Plaintiff alleges that the debt at issue arises from a credit card account with Citi. This statement is not specific enough to demonstrate that the debt falls within the purview of the FDCPA, i.e., for personal, family or household purposes. Therefore, Plaintiff needs to allege details concerning the nature of the credit card debt. Because the Court cannot find that amendment would be futile, the Court dismisses Count I with leave to amend.

### B. Count II

The Telephone Communication Protection Act ("TCPA") prohibits calls made without express consent of the contacted party using an automatic telephone dialing system or an artificial or prerecorded voice. CPS points out that there are two provisions of the TCPA by which Plaintiff may bring suit. First, she could bring suit against CPS under § 227(b)(1)(A)(iii), which prohibits making any call using any automatic telephone dialing system or an artificial or prerecorded voice to any cell phone number without the prior express consent of the called party. 47 U.S.C. § 227(b)(1)(A)(iii). To allege a prima facie claim under this provision of the TCPA, Plaintiff must show: (1) CPS called a cellular telephone number; (2) CPS used an automatic telephone dialing system; and (3) CPS did not have Plaintiff's prior express consent to do so. *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012). Because Plaintiff states that she was called only on her "home phone number" (ECF No. 5 at 5), a claim under this provision of the statute does not survive.

Alternatively, Plaintiff could bring a claim under § 227(b)(1)(B) of the TCPA, which makes it unlawful to "initiate any telephone call" to a residential telephone line by using an artificial or prerecorded voice to deliver a message unless the contacted party has given prior express consent to be contacted. 47 U.S.C. § 227(b)(1)(B). However, CPS aptly points out that the Federal Communications Commission ("FCC") has promulgated regulations that exempt calls made for a commercial purpose that do not deliver unsolicited advertisements. (ECF No. 12 at 9 (citing 47 C.F.R. § 64.1200(a)(3)(iii)).) The FCC has issued guidance stating that debt collection calls are adequately covered by the

TCPA's existing exemptions because debt collection calls are "commercial calls which do not adversely affect privacy rights and which do not transmit an unsolicited advertisement." *See* Rules and Regulations Implementing the TCPA, 7 FCC Rcd. 8752, 8773 (Oct. 16, 1992). Moreover, "prerecorded debt collection calls are exempt from the prohibitions on prerecorded calls to residences [under § 227(b)(1)(B)] as commercial calls [ ] do not transmit unsolicited advertisement[s]." *Id.*

In her FAC, Plaintiff also alleges that CPS violated the TCPA because CPA contacted her at her home phone number, which is on the Do Not Call registry. (*See* ECF No. 5 at 5.) Under § 227(c)(3)(F), telephone solicitations to a phone number on the Do Not Call registry are prohibited. However, as CPS points out, the call made to Plaintiff does not amount to a "telephone solicitation" under the TCPA. (ECF No. 12 at 9-10.) The statute defines "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person, but such term does not include a call or message (A) to any person with that person's prior express invitation or permission, (B) to any person with whom the caller has an established business relationship, or (C) by a tax exempt nonprofit organization." 47 U.S.C. § 227(a)(4). The call CPS supposedly made to Plaintiff was to collect on an alleged debt she owed and did not involve encouraging Plaintiff to purchase, rent, or invest in property, goods or services. The Court therefore dismisses Count II with prejudice.

### C.     Count III

A fraud claim under the NDTPA must meet the heightened pleading requirement under Rule 9(b). *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (under Rule 9(b), the "circumstances of the fraud must be stated with particularity"). In the FAC, Plaintiff claims that CPS engaged in deceptive trade practices by failing to validate the purported debt. (ECF No. 5 at 6.) Plaintiff fails to allege sufficient facts in the FAC to support her claim that CPS engaged in deceptive trade practices and her Opposition to CPS's Motion fails to allege any additional facts that would remedy this issue.

7

CPA also points out that they are not subject to NDTPA as they are a collection agency, and NDTPA applies only to those who engage in the sale or lease of goods or services. *Gibilterra v. Aurora Loan Servs., LLC*, No. 2:12-CV-685 JCM (VCF), 2013 WL 4040820, *2 (D. Nev. Aug. 6, 2013).

Count III fails to state a claim, and the Court finds that amendment would be futile. The Court therefore dismiss Count III with prejudice.

**V.    CITI'S MOTION (ECF No. 29)**

Citi challenges Plaintiff's allegations that: (1) it is vicariously liable for CPS's violation of the TCPA; (2) that its corporate charter does not authorize it to engage in consumer lending; (3) that Middleton did not have a contract with Citi; and (4) that it failed to provide Middleton with notice under 16 C.F.R. § 433.2. (ECF No. 29 at 4.)

The Court agrees with Citi that Plaintiff alleges a mere legal conclusion that Citi is vicariously liable for the phone call made by CPS or that CPS is an agent of Citi. In fact, Plaintiff points out that Citi sold her account (presumably to CPS) (ECF No. 5 at 5), making CPS the successive owner of the debt and not an agent of Citi.[2]

The Court also agrees with Citi that Plaintiff fails to allege a violation of NRS § 598.0977. Not only are there no factual allegations in the FAC demonstrating what deceptive practices Citi engaged in or how those practices damaged Plaintiff, but Plaintiff also fails to allege that she is either an "elderly person" or a "person with a disability" within the meaning of the statute. Because a claim under Nevada's Deceptive Trade Practices Act amounts to a fraud allegation, Plaintiff must meet the heightened pleading standard under Rule 9. However, she fails to allege any facts to support this claim.

///

---

[2] The three other allegations stated in the previous paragraph are mere legal conclusions as well. With regard to allegation (2), Plaintiff appears to allege that Citi has engaged in consumer lending without actual authority to do so. However, Plaintiff does not have standing to bring such a claim, which would amount to a claim for breach of fiduciary duty against Citi, as she does not allege she is a shareholder of the company. Allegation (3) is far too vague; it is unclear what contract Plaintiff is referring to. Allegation (4) is also a mere legal conclusion and does not provide details as to what consumer credit contract the notice should have been placed on.

8

Moreover, in Plaintiff's Opposition to Citi's Motion (ECF No. 32), she fails to provide any additional facts concerning the issues that Citi raised. For that reason, the Court dismisses Plaintiff's claims against Citi with prejudice.

## VI. LEAVE TO AMEND

The Court has discretion to grant leave to amend and should freely do so "when justice so requires." *Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (quoting Fed. R. Civ. P. 15(a)). As Plaintiff is proceeding *pro se* and the Court cannot conclude that amendment would be futile, the Court grants Plaintiff leave to amend Count I against CPS if she is able to cure the deficiencies identified in this Order.

## VII. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motions.

It is therefore ordered that Defendant Cavalry Portfolio Services' Motion to Dismiss (ECF No. 12) is granted. The Court dismisses Count I without prejudice and with leave to amend to include facts showing that the debt upon which CPS attempted to collect stemmed from personal, household, and/or family expenses. The Court dismisses with prejudice Counts II and III.

It is further ordered that Defendant Citibank's Motion to Dismiss (ECF No. 29) is granted. The claims against Citi are dismissed with prejudice.

DATED THIS 13th day of March 2017.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE